UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

TONETTE SINGLETON,

    Plaintiff,

v.

COMMISSIONER OF
SOCIAL SECURITY,

    Defendant.
_____/

Hon. Ellen S. Carmody

Case No. 1:11-cv-1351

# **OPINION**

This is an action pursuant to Section 205(g) of the Social Security Act, 42 U.S.C. § 405(g), to review a final decision of the Commissioner of Social Security denying Plaintiff's claim for Supplemental Security Income (SSI) benefits under Title XVI of the Social Security Act. On April 4, 2012, the parties agreed to proceed in this Court for all further proceedings, including an order of final judgment. (Dkt. #10).

Section 405(g) limits the Court to a review of the administrative record and provides that if the Commissioner's decision is supported by substantial evidence it shall be conclusive. The Commissioner has found that Plaintiff is not disabled within the meaning of the Act. For the reasons stated below, the Court concludes that the Commissioner's decision is supported by substantial evidence. Accordingly, the Commissioner's decision is **affirmed**.

1

## **STANDARD OF REVIEW**

The Court's jurisdiction is confined to a review of the Commissioner's decision and of the record made in the administrative hearing process. *See Willbanks v. Sec'y of Health and Human Services*, 847 F.2d 301, 303 (6th Cir. 1988). The scope of judicial review in a social security case is limited to determining whether the Commissioner applied the proper legal standards in making her decision and whether there exists in the record substantial evidence supporting that decision. *See Brainard v. Sec'y of Health and Human Services*, 889 F.2d 679, 681 (6th Cir. 1989).

The Court may not conduct a de novo review of the case, resolve evidentiary conflicts, or decide questions of credibility. *See Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984). It is the Commissioner who is charged with finding the facts relevant to an application for disability benefits, and her findings are conclusive provided they are supported by substantial evidence. *See* 42 U.S.C. § 405(g).

Substantial evidence is more than a scintilla, but less than a preponderance. *See Cohen v. Sec'y of Dep't of Health and Human Services*, 964 F.2d 524, 528 (6th Cir. 1992) (citations omitted). It is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *See Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Bogle v. Sullivan*, 998 F.2d 342, 347 (6th Cir. 1993). In determining the substantiality of the evidence, the Court must consider the evidence on the record as a whole and take into account whatever in the record fairly detracts from its weight. *See Richardson v. Sec'y of Health and Human Services*, 735 F.2d 962, 963 (6th Cir. 1984).

As has been widely recognized, the substantial evidence standard presupposes the existence of a zone within which the decision maker can properly rule either way, without judicial

interference. *See Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986) (citation omitted). This standard affords to the administrative decision maker considerable latitude, and indicates that a decision supported by substantial evidence will not be reversed simply because the evidence would have supported a contrary decision. *See Bogle*, 998 F.2d at 347; *Mullen*, 800 F.2d at 545.

## PROCEDURAL POSTURE

Plaintiff was 24 years old on her alleged disability onset date. (Tr. 165-69). She completed the eleventh grade and worked previously as a cashier, laborer, and kitchen helper. (Tr. 27, 37, 188-89, 211-16).

Plaintiff applied for benefits on March 2, 2010, alleging that she had been disabled since May 9, 2005, due to diabetes, anxiety, and depression. (Tr. 165-69, 187). Plaintiff's application was denied, after which time she requested a hearing before an Administrative Law Judge (ALJ). (Tr. 115-64). On March 22, 2011, Plaintiff appeared before ALJ Edward Studzinski, with testimony being offered by Plaintiff, a friend of Plaintiff, and a vocational expert. (Tr. 33-77). In a written decision dated June 28, 2011, the ALJ determined that Plaintiff was not disabled. (Tr. 17-29). The Appeals Council declined to review the ALJ's determination, rendering it the Commissioner's final decision in the matter. (Tr. 7-9). Plaintiff subsequently initiated this appeal pursuant to 42 U.S.C. § 405(g), seeking judicial review of the ALJ's decision.

## RELEVANT MEDICAL HISTORY

On July 16, 2009, Plaintiff was examined by Dr. John Taglia. (Tr. 249-51). Plaintiff reported that she was experiencing anxiety and depression. (Tr. 249). Plaintiff also "complain[ed]

of a lack of social support" in her attempt to raise her five children. (Tr. 249-50). Plaintiff's "affect tended to be dysphoric" but the results of a mental status examination were otherwise unremarkable. (Tr. 251). Plaintiff was diagnosed with depressive disorder and anxiety disorder. (Tr. 252). Her GAF score was rated at 48.[1] (Tr. 252). The doctor recommended that Plaintiff be treated with antidepressants and therapy. (Tr. 251).

On December 4, 2009, Plaintiff was examined by Dr. Taglia. (Tr. 256-57). Plaintiff reported that her medications "seem to be working." (Tr. 256). Plaintiff also reported that "she has been exercising and has lost some weight." (Tr. 256). The doctor observed that Plaintiff's "affect was somewhat less dysphoric than before" and that "her thought processes tended to be more coherent." (Tr. 256-57). He described Plaintiff's thought content as "generally unremarkable" and her insight and judgment as "limited but improved." (Tr. 257). Dr. Taglia concluded that Plaintiff was "somewhat depressed but still much better than before" and "seems to be more ready to engage in treatment." (Tr. 257). Plaintiff's medication regimen was modified and she was "encouraged to continue with therapy." (Tr. 257).

Plaintiff was examined by Dr. Taglia on February 26, 2010. (Tr. 260-61). Plaintiff reported that "she is doing better." (Tr. 260). The results of a mental status examination were unremarkable and the doctor observed that Plaintiff's insight and judgment "is improving." (Tr. 260). Plaintiff's GAF score was rated as 54.[2] (Tr. 260). Treatment notes dated March 30, 2010, indicate that Plaintiff "is doing somewhat better" and is not experiencing any side effects of her

---

[1] The Global Assessment of Functioning (GAF) score refers to the clinician's judgment of the individual's overall level of functioning. American Psychiatric Association, *Diagnostic and Statistical Manual of Mental Disorders* 30 (4th ed. 1994) (hereinafter DSM-IV). A score of 48 indicates that the individual is experiencing "serious symptoms or any serious impairment in social, occupational, or school functioning." DSM-IV at 34.

[2] A GAF score of 54 indicates "moderate symptoms or moderate difficulty in social, occupational, or school functioning." DSM-IV at 34.

medications. (Tr. 262). Plaintiff's GAF score was rated as 56. (Tr. 262).

On August 2, 2010, Plaintiff participated in a consultive examination conducted by Anne Cantor, M.A., LLP. (Tr. 319-24). Plaintiff reported that she was disabled due to depression and anxiety. (Tr. 319). Plaintiff reported that she "does her own shopping" and "does her own housework, laundry, cooking, and childcare." (Tr. 321). Plaintiff also reported that she enjoys watching television and taking her kids "to the park." (Tr. 321). The results of a mental status examination were unremarkable with "no evidence of psychomotor agitation or retardation." (Tr. 321-23). Cantor further concluded that Plaintiff "is capable of understanding, remembering and carrying out instructions and making decisions regarding work-related matters." (Tr. 323). Plaintiff was diagnosed with dysthymic disorder and generalized anxiety disorder and her GAF score was rated as 52. (Tr. 323-24).

On August 12, 2010, Plaintiff was examined by Dr. Taglia. (Tr. 272-73). Plaintiff reported that "she is doing much better." (Tr. 272). The doctor observed that Plaintiff's "thought processes were generally more organized than in the past." (Tr. 272). The results of a mental status examination were otherwise unremarkable. (Tr. 272-73). Plaintiff's GAF score was rated as 60. (Tr. 272).

On October 20, 2010, Plaintiff was examined by Dr. Taglia. (Tr. 442). Plaintiff reported that she was experiencing anxiety, but the doctor observed that "much of this seems to be due to external stressors and intellectual limitations." (Tr. 442). The results of a mental status examination were unremarkable. (Tr. 442). Plaintiff's medication regimen was modified and she was encouraged to continue with therapy. (Tr. 442).

At the administrative hearing Plaintiff testified that she prepares meals, cleans house,

mops, sweeps, and washes laundry. (Tr. 40-41). Plaintiff reported that she attends parent-teacher conferences for her children. (Tr. 43). Plaintiff testified that she receives and manages the disability benefits payments for two of her children. (Tr. 44). Plaintiff testified that she can read and make change. (Tr. 44). Plaintiff testified that she helped her children with their homework. (Tr. 45). Plaintiff reported that her medications improved her depression. (Tr. 50). Plaintiff reported that she was able to sit "okay," could walk to the store, and could lift a television. (Tr. 51-52).

## ANALYSIS OF THE ALJ'S DECISION

The social security regulations articulate a five-step sequential process for evaluating disability. *See* 20 C.F.R. §§ 404.1520(a-f), 416.920(a-f).[3] If the Commissioner can make a dispositive finding at any point in the review, no further finding is required. *See* 20 C.F.R. §§ 404.1520(a), 416.920(a). The regulations also provide that if a claimant suffers from a nonexertional impairment as well as an exertional impairment, both are considered in determining her residual functional capacity. *See* 20 C.F.R. §§ 404.1545, 416.945.

The burden of establishing the right to benefits rests squarely on Plaintiff's shoulders,

---

[3] 1. An individual who is working and engaging in substantial gainful activity will not be found to be "disabled" regardless of medical findings (20 C.F.R. 404.1520(b));

2. An individual who does not have a "severe impairment" will not be found "disabled" (20 C.F.R. 404.1520(c));

3. If an individual is not working and is suffering from a severe impairment which meets the duration requirement and which "meets or equals" a listed impairment in Appendix 1 of Subpart P of Regulations No. 4, a finding of "disabled" will be made without consideration of vocational factors (20 C.F.R. 404.1520(d));

4. If an individual is capable of performing work he or she has done in the past, a finding of "not disabled" must be made (20 C.F.R. 404.1520(e));

5. If an individual's impairment is so severe as to preclude the performance of past work, other factors including age, education, past work experience, and residual functional capacity must be considered to determine if other work can be performed (20 C.F.R. 404.1520(f)).

and she can satisfy her burden by demonstrating that her impairments are so severe that she is unable to perform her previous work, and cannot, considering her age, education, and work experience, perform any other substantial gainful employment existing in significant numbers in the national economy. *See* 42 U.S.C. § 423(d)(2)(A); *Cohen*, 964 F.2d at 528. While the burden of proof shifts to the Commissioner at step five, Plaintiff bears the burden of proof through step four of the procedure, the point at which her residual functioning capacity (RFC) is determined. *See Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987); *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 528 (6th Cir. 1997) (ALJ determines RFC at step four, at which point claimant bears the burden of proof).

        The ALJ determined that Plaintiff suffered from borderline intellectual functioning, anxiety, and obesity, severe impairments that whether considered alone or in combination with other impairments, failed to satisfy the requirements of any impairment identified in the Listing of Impairments detailed in 20 C.F.R., Part 404, Subpart P, Appendix 1. (Tr. 19-22). With respect to Plaintiff's residual functional capacity, the ALJ determined that Plaintiff retained the capacity to perform "a full range of work at all exertional levels" subject to the following non-exertional limitations: (1) she is limited to simple, routine, and repetitive tasks in a position that requires no interaction with the public and only limited and superficial interaction with co-workers; and (2) she is limited to work that does not require any complicated written communication and can be performed following a visual demonstration. (Tr. 23).

        A vocational expert testified that despite her limitations, Plaintiff could still perform her past relevant work as a kitchen helper. (Tr. 72). The vocational expert further testified that even if Plaintiff was unable to perform her past relevant work, there existed approximately 7,100 jobs in the "western and central region" of the lower peninsula of the state of Michigan which an individual

with Plaintiff's RFC could perform, such limitations notwithstanding. (Tr. 72-73). This represents a significant number of jobs. *See Born v. Sec'y of Health and Human Services*, 923 F.2d 1168, 1174 (6th Cir. 1990); *Hall v. Bowen*, 837 F.2d 272, 274 (6th Cir. 1988); *Martin v. Commissioner of Social Security*, 170 Fed. Appx. 369, 374 (6th Cir., Mar. 1, 2006). The ALJ concluded, therefore, that Plaintiff was not entitled to benefits.

> a. Section 12.05 of the Listing of Impairments

Plaintiff first asserts that she is entitled to disability benefits because she satisfies the requirements of section 12.05 (Mental Retardation) of the Listing of Impairments. The Listing of Impairments, detailed in 20 C.F.R., Part 404, Subpart P, Appendix 1, identifies various impairments which, if present to the severity detailed therein, result in a finding that the claimant is disabled.

Plaintiff bears the burden to demonstrate that she satisfies the requirements of a listed impairment. *See Cruse v. Comm'r of Soc. Sec.*, 502 F.3d 532, 540 (6th Cir. 2007) (the claimant bears the burden of proof through step four of the sequential disability determination procedure); *Bartyzel v. Comm'r of Soc. Sec.*, 74 Fed. Appx. 515, 527 (6th Cir., Aug. 26, 2003) (claimant bears the burden of establishing that he satisfies a listed impairment). Section 12.05 of the Listing provides, in relevant part, the following:

> 12.05 Mental retardation: Mental retardation refers to significantly subaverage general intellectual functioning with deficits in adaptive functioning initially manifested during the developmental period; i.e., the evidence demonstrates or supports onset of the impairment before age 22.
>
> The required level of severity for this disorder is met when the requirements in A, B, C, or D are satisfied.
>
> A. Mental incapacity evidenced by dependence upon

        others for personal needs (e.g., toileting, eating, dressing, or bathing) and inability to follow directions, such that the use of standardized measures of intellectual functioning is precluded;

    OR

B.    A valid verbal, performance, or full scale IQ of 59 or less;

    OR

C.    A valid verbal, performance, or full scale IQ of 60 through 70 and a physical or other mental impairment imposing additional and significant work-related limitation of function;

    OR

D.    A valid verbal, performance, or full scale IQ of 60 through 70, resulting in at least two of the following:

      1.    Marked restriction of activities of daily living; or

      2.    Marked difficulties in maintaining social functioning; or

      3.    Marked difficulties in maintaining concentration, persistence or pace; or

      4.    Repeated episodes of decompensation, each of extended duration.

20 C.F.R., Part 404, Subpart P, Appendix 1, § 12.05 (2008).

        Plaintiff asserts that she satisfies sub sections 12.05(C). While the present record does not contain any evidence that Plaintiff has scored below 70 on any IQ test, the ALJ accepted the finding, made by another ALJ who denied a previous application by Plaintiff for benefits, that Plaintiff had a "valid verbal, performance, or full scale" IQ score of between 60-70. (Tr. 21-22).

9

The ALJ also recognized that Plaintiff suffers from an emotional impairment which imposes additional and significant work-related limitations.

Given these findings, Plaintiff satisfies the criteria articulated in subsection (C). As discussed below, however, Plaintiff does not satisfy the additional requirements to be found disabled under this particular listing. In addition to satisfying the aforementioned requirements articulated in subsection (C), Plaintiff must also satisfy the requirements articulated in the introductory paragraph of Section 12.05. 20 C.F.R., Part 404, Subpart P, Appendix 1, § 12.00(A) ("[i]f your impairment satisfies the diagnostic description in the introductory paragraph and any one of the four sets of criteria, we will find that your impairment meets" section 12.05). Specifically, Plaintiff must establish that she satisfies the "diagnostic description" of mental retardation articulated in the introductory paragraph of Section 12.05. *See, e.g., West v. Comm'r of Soc. Sec.*, 240 Fed. Appx. 692, 697-98 (6th Cir., July 5, 2007) (to satisfy Section 12.05, the claimant must demonstrate that she experienced deficiencies in adaptive functioning prior to attaining the age of 22); *Cooper v. Comm'r of Soc. Sec.*, 217 Fed. Appx. 450, 451 (6th Cir., Feb. 15, 2007) (same); *Foster v. Halter*, 279 F.3d 348, 355 (6th Cir. 2001) (same).

The record contains no evidence that Plaintiff experienced deficiencies in adaptive behavior or suffered from mental retardation prior to the age of 22 or at anytime thereafter. Neither Plaintiff's care providers nor any of the medical professionals who examined the record in this case concluded that Plaintiff was mentally retarded, satisfied the "diagnostic description" of mental retardation articulated in the introductory paragraph of Section 12.05, or experienced deficiencies in adaptive functioning prior to age 22. The record demonstrates that Plaintiff, at most, suffers from borderline intellectual functioning which, is inconsistent with a diagnosis of mental retardation and,

10

therefore, precludes a finding that the requirements of Section 12.05 have been met. *See Cooper*, 217 Fed. Appx. at 451.

Plaintiff's testimony at the administrative hearing is also inconsistent with a finding that she is mentally retarded. Plaintiff testified that she plans and prepares meals, washes laundry, attends parent-teaches conferences, manages the disability payments for two of her children, and helps her children with their homework. (Tr. 41-45). Plaintiff also testified that she is able to read. (Tr. 44). It was previously reported that Plaintiff cares for her children, reads, prepares meals, washes laundry, cleans her house, shops, uses public transportation, pays bills, counts change, and maintains bank accounts. (Tr. 199-206, 223-30).

Plaintiff's employment history is likewise inconsistent with the conclusion that she is mentally retarded and indicates that Plaintiff did not experience deficiencies in adaptive behavior prior to age 22, or thereafter for that matter. *See Burrell v. Comm'r. of Soc. Sec.*, 2000 WL 1827799 at *2 (6th Cir., Dec. 8, 2000) (no evidence of a deficit in adaptive functioning where claimant "remained fairly active, maintains an interest in his household, and enjoys apparent satisfactory relationships with family members"); *Adkins v. Astrue*, 226 Fed. Appx. 600, 605 (7th Cir., Apr. 10, 2007) (claimant possessing an 8th grade education and "gainfully employed until the age of forty-one" not disabled under section 12.05); *Wright v. Astrue*, 2011 WL 1486208 at *7 (N.D. Ind., Mar. 31, 2011) (when assessing whether claimant satisfies section 12.05, the court must consider more than IQ scores alone and must also consider claimant's work history and other activities); *Freeman v. Apfel*, 208 F.3d 687, 692 (8th Cir. 2000) (claimant who possessed a 10th grade education, and who worked as an oil-changer, not disabled under section 12.05); *Williams v. Sullivan*, 970 F.2d 1178, 1185 (3rd Cir. 1992) (claim of mental retardation contradicted by the fact that claimant was

11

able to "maintain a job for most of his adult life"); 20 C.F.R., Part 404, Subpart P, Appendix 1, § 12.00(D) (recognizing that when evaluating mental disorders, a claimant's work history is "particularly useful" in assessing the extent of impairment). Finally, Plaintiff's reported activities are inconsistent with her claim of mental retardation. (Tr. 130-39, 197-204). Accordingly, the Court concludes that substantial evidence supports the ALJ's determination that Plaintiff does not satisfy Section 12.05 of the Listing of Impairments.

                b.      The ALJ's RFC Determination is Supported by Substantial Evidence

The ALJ found that Plaintiff experienced only "mild difficulties" with regard to concentration, persistence, and pace. (Tr. 20-21). Plaintiff argues that she is entitled to relief because the ALJ "made an incomplete RFC determination." Specifically, Plaintiff argues that the ALJ erred by failing to incorporate into his RFC determination specific limitations regarding her ability to maintain concentration, persistence, and pace. In support of this argument, Plaintiff relies on *Ealy v. Commissioner of Social Security*, 594 F.3d 504 (6th Cir. 2010). This particular case, however, is easily distinguishable and does not support Plaintiff's position.

Jimmy Ealy's application for disability benefits was denied by the Social Security Administration following a hearing before an Administrative Law Judge. *Id.* at 506. The medical record before the ALJ contained the conclusion by Dr. Scher that Plaintiff was limited to the performance of "simple repetitive tasks" in "[two-hour] segments over an eight-hour day where speed was not critical." *Id.* at 516. The ALJ expressly adopted this limitation. *Id.* The ALJ also found that Ealy "has moderate difficulties" with regard to concentration, persistence, or pace. *Id.* at 510. Despite expressly adopting the limitation articulated by Dr. Scher, the hypothetical question

which the ALJ posed to the vocational expert stated, in relevant part, "assume this person [is] limited to simple, repetitive tasks and instructions in non-public work settings." *Id.* at 516.

The Sixth Circuit found that the ALJ's reliance on the response to this particular question was improper because the ALJ, having expressly adopted the limitation articulated by Dr. Scher, "should have included [in his hypothetical question] the restriction that Ealy could work two-hour work segments during an eight-hour work day, and that speed of his performance could not be critical to his job." *Id.* As the Sixth Circuit concluded, because "Ealy's limitations were not fully conveyed to the vocational expert," the ALJ's reliance on the vocational expert's testimony could not constitute substantial evidence. *Id.* at 516-17.

Contrary to Plaintiff's argument, the *Ealy* decision does not stand for the proposition that an RFC determination must include specific limitations regarding concentration, persistence, or pace whenever the ALJ finds limitations in such areas. *See, e.g., Clayton v. Astrue*, 2013 WL 427407 at *7 (S.D. Ohio, Feb. 1, 2013) (distinguishing *Ealy* and limiting it to its facts); *Steed v. Astrue*, 2012 WL 1097003 at *9 (N.D. Ohio, Mar. 20, 2012) (same); *Alonso v. Commissioner of Social Security*, 2011 WL 4526676 at *11 (W.D. Mich., Aug. 8, 2011) (same); *McGaha v. Astrue*, 2012 WL 762176 at *5 (E.D. Ky., Mar. 7, 2012) (same). Rather, *Ealy* simply reiterates the long-held notion that if the ALJ relies on the response to a hypothetical question, such question (and by extension his RFC determination) must accurately portray the claimant's limitations and be consistent with the ALJ's express findings. *See, e.g., Clayton*, 2013 WL 427407 at *7; *Steed*, 2012 WL 1097003 at *9; *Alonso*, 2011 WL 4526676 at *11; *McGaha*, 2012 WL 762176 at *5.

In *Ealy*, the ALJ expressly adopted a specific limitation which he then failed to incorporate into his RFC determination or hypothetical question to the vocational expert. Here, no

such shortcoming or inconsistency exists. The ALJ found that Plaintiff experienced only "mild difficulties" with regard to concentration, persistence, and pace. This conclusion is supported by substantial evidence and sufficiently accounted for in the ALJ's RFC determination. The ALJ's RFC determination is supported by substantial evidence and is not inconsistent with the ALJ's findings. Accordingly, this argument is rejected.

c. The ALJ Properly Discounted Plaintiff's Subjective Allegations

At the administrative hearing, Plaintiff testified that her impairments were disabling and prevented her from working. Specifically, Plaintiff testified that she could not work because she experienced difficulty comprehending directions. (Tr. 40-41). She reported that she is sad and cries "like twice a week." (Tr. 48). Plaintiff testified that "sometimes" she gets "frustrated" trying to care for her five children. (Tr. 57). The ALJ concluded that Plaintiff's subjective allegations were "only partially credible" and that "although [Plaintiff's] impairments are severe, they do not preclude her from completed basic work related activities." (Tr. 27). Plaintiff asserts that the ALJ improperly discounted her subjective allegations.

As the Sixth Circuit has long recognized, "pain alone, if the result of a medical impairment, *may* be severe enough to constitute disability." *King v. Heckler*, 742 F.2d 968, 974 (6th Cir. 1984) (emphasis added); *see also*, *Grecol v. Halter*, 46 Fed. Appx. 773, 775 (6th Cir., Aug. 29, 2002) (same). As the relevant Social Security regulations make clear, however, a claimant's "statements about [his] pain or other symptoms will not alone establish that [he is] disabled." 20 C.F.R. § 404.1529(a); *see also*, *Walters v. Commissioner of Social Security*, 127 F.3d 525, 531 (6th Cir. 1997) (quoting 20 C.F.R. § 404.1529(a)) *Hash v. Commissioner of Social Security*, 309 Fed.

14

Appx. 981, 989 (6th Cir., Feb. 10, 2009). Instead, as the Sixth Circuit has established, a claimant's assertions of disabling pain and limitation are evaluated pursuant to the following standard:

> First, we examine whether there is objective medical evidence of an underlying medical condition. If there is, we then examine: (1) whether objective medical evidence confirms the severity of the alleged pain arising from the condition; or (2) whether the objectively established medical condition is of such a severity that it can reasonably be expected to produce the alleged disabling pain.

*Walters*, 127 F.3d at 531 (citations omitted). This standard is often referred to as the *Duncan* standard. *See Workman v. Commissioner of Social Security*, 105 Fed. Appx. 794, 801 (6th Cir., July 29, 2004).

Accordingly, as the Sixth Circuit has repeatedly held, "subjective complaints may support a finding of disability only where objective medical evidence confirms the severity of the alleged symptoms." *Id.* (citing *Blankenship v. Bowen*, 874 F.2d 1116, 1123 (6th Cir. 1989)). However, where the objective medical evidence fails to confirm the severity of a claimant's subjective allegations, the ALJ "has the power and discretion to weigh all of the evidence and to resolve the significant conflicts in the administrative record." *Workman*, 105 Fed. Appx. at 801 (citing *Walters*, 127 F.3d at 531).

In this respect, it is recognized that the ALJ's credibility assessment "must be accorded great weight and deference." *Workman*, 105 Fed. Appx. at 801 (citing *Walters*, 127 F.3d at 531); *see also*, *Heston v. Commissioner of Social Security*, 245 F.3d 528, 536 (6th Cir. 2001) ("[i]t is for the [Commissioner] and his examiner, as the fact-finders, to pass upon the credibility of the witnesses and weigh and evaluate their testimony"). It is not for this Court to reevaluate such evidence anew, and so long as the ALJ's determination is supported by substantial evidence, it must stand. The ALJ found Plaintiff's subjective allegations to not be fully credible, a finding that should

not be lightly disregarded. *See Varley v. Sec'y of Health and Human Services*, 820 F.2d 777, 780 (6th Cir. 1987).

The ALJ cited several reasons for discounting Plaintiff's testimony. As the ALJ correctly recognized, Plaintiff's "activities of daily living are inconsistent with her allegations of disability." (Tr. 26). The ALJ noted evidence in the record indicating Plaintiff's "noncompliance with prescribed medical treatment." (Tr. 26). Specifically, the record contains evidence that Plaintiff did not follow her care providers' dietary instructions and was "non-compliant" with regard to taking her medications regularly. (Tr. 272, 338). The ALJ also noted that "external stressors" are "significantly contributing to, if not causing, the claimant's alleged symptoms of anxiety and depression." (Tr. 26). As the ALJ concluded, Plaintiff's "character and life situation do not constitute a disabling mental impairment." (Tr. 26). As previously noted, when Plaintiff takes her medication and follows her care providers' instructions her impairments have improved. In sum, the ALJ's decision to accord limited weight to Plaintiff's subjective allegations is supported by substantial evidence.

d. The ALJ Properly Relied on the Vocational Expert's Testimony

Finally, Plaintiff asserts that the ALJ relied upon the response to an inaccurate hypothetical question. While the ALJ may satisfy his burden through the use of hypothetical questions posed to a vocational expert, such hypothetical questions must accurately portray the claimant's physical and mental impairments. *See Cline v. Comm'r of Soc. Sec.*, 96 F.3d 146, 150 (6th Cir. 1996).

The hypothetical question which the ALJ posed to the vocational expert simply asked

whether there existed jobs which Plaintiff could perform consistent with her RFC. In response, the vocational expert testified that if so impaired, Plaintiff could perform her past relevant work as a kitchen helper as well as an additional 7,100 jobs in the "western and central region" of the lower peninsula of the state of Michigan. The ALJ's RFC determination is supported by substantial evidence and there was nothing improper or incomplete about the hypothetical questions the ALJ posed to the vocational expert. The Court concludes, therefore, that the ALJ properly relied upon the vocational expert's testimony.

## **CONCLUSION**

For the reasons articulated herein, the Court concludes that the ALJ's decision is supported by substantial evidence. Accordingly, the Commissioner's decision is **affirmed**. A judgment consistent with this opinion will enter.

Date: March 12, 2013  /s/ Ellen S. Carmody
ELLEN S. CARMODY
United States Magistrate Judge